## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

HYLAS YACHTS, INC.,

        Plaintiff,

   v.

QUEEN LONG MARINE LTD. and HYLAS YACHTS
INTERNATIONAL, LLC,

        Defendants.

C.A. No. 1:17-cv-11719-RWZ

QUEEN LONG MARINE CO. LTD.,

        Counterclaim/Third-Party Plaintiff,

   v.

HYLAS YACHTS, INC., KYLE JACHNEY, &
CARIBBEAN YACHT CHARTERS, INC.,

        Counterclaim & Third-Party Defendants.

## <u>ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND THIRD-PARTY COMPLAINT OF DEFENDANTS QUEEN LONG MARINE LTD. AND HYLAS YACHTS INTERNATIONAL, LLC</u>

## <u>ANSWER</u>

In response to the allegations in the Complaint of Plaintiff, HYLAS YACHTS, INC. ("HYI" or "Plaintiff"), Defendants, QUEEN LONG MARINE CO. LTD. ("Queen Long") (improperly sued as Queen Long Marine Ltd.) and HYLAS YACHTS INTERNATIONAL LLC ("Hylas International") (together, "Defendants"), by and through undersigned counsel, hereby:

## PARTIES

1. State that they lack knowledge or information sufficient to enable them to response to the allegations set forth in Paragraph 1 of the Complaint.

2. Admit only that Queen Long is a Taiwanese company with a principal place of business at 4 Tung Ya Rd., Shaou Kang, Kaohsiung, Taiwan, and deny any and all remaining allegations set forth in Paragraph 2 of Complaint.

3. Admit the allegations set forth in Paragraph 3 of the Complaint.

## JURISDICTION AND VENUE

4. State that Paragraph 4 is a section heading to which no response is required from Defendants; to the extent a response is required, Defendants admit the allegations.

5. State that Paragraph 5 is a legal conclusion to which no response is required from Defendants; to the extent a response is required, Defendants deny the allegations.

6. State that Paragraph 6 is a legal conclusion to which no response is required from Defendants; to the extent a response is required, Defendants deny the allegations.

7. State that Paragraph 7 is a legal conclusion to which no response is required from Defendants; to the extent a response is required, Defendants deny the allegations.

8. State that Paragraph 8 is a legal conclusion to which no response is required from Defendants; to the extent a response is required, Defendants deny the allegations.

9. Deny the allegations set forth in Paragraph 9 of the Complaint.

10. Admit only that different individuals within the Huang family own varying percentages of one or more of the Defendants, and deny any and all remaining allegations set forth in Paragraph 10 of the Complaint.

11. Deny the allegations set forth in Paragraph 11 of the Complaint.

12. Deny the allegations set forth in Paragraph 12 of the Complaint.

13. Deny the allegations set forth in Paragraph 13 of the Complaint.

14. Deny the allegations set forth in Paragraph 14 of the Complaint.

15. Deny the allegations set forth in Paragraph 15 of the Complaint.

## FACTS COMMON TO ALL COUNTS

16. State that they lack knowledge or information sufficient to enable them to respond to the allegations set forth in Paragraph 16 of the Complaint.

17. State that they lack knowledge or information sufficient to enable them to respond to the allegations set forth in Paragraph 17 of the Complaint.

18. Deny the allegations set forth in Paragraph 18 of the Complaint.

19. Admit only that Defendant Queen Long has been building custom luxury sailing yachts since before 1998 and deny any and all remaining allegations set forth in Paragraph 19 of Complaint.

20. Deny the allegations set forth in Paragraph 20 of the Complaint.

<u>The History of the Relationship of the Parties</u>

21. Admit only that Queen Long has been developing designs for the manufacture, sale, and distribution of custom yachts since before 1998, and deny any and all remaining allegations set forth in Paragraph 21 of Complaint.

22. Admit only that Queen Long has been developing and building molds to produce a line of Hylas brand yachts since before 1998, and deny any and all remaining allegations set forth in Paragraph 22 of Complaint.

23. Deny the allegations set forth in Paragraph 23 of the Complaint.

24. Deny the allegations set forth in Paragraph 24 of the Complaint.

25. Deny the allegations set forth in Paragraph 25 of the Complaint.

26. Deny the allegations set forth in Paragraph 26 of the Complaint.

27. Deny the allegations set forth in Paragraph 27 of the Complaint.

28. Deny the allegations set forth in Paragraph 28 of the Complaint.

29. State that they lack knowledge or information sufficient to enable them to respond to the allegations set forth in Paragraph 29 of the Complaint.

30. Deny the allegations set forth in Paragraph 30 of the Complaint.

31. Deny the allegations set forth in Paragraph 31 of the Complaint.

32. Admit only that Queen Long has made profits from yachts manufactured by Queen Long for approximately thirty years, and deny any and all remaining allegations set forth in Paragraph 32 the Complaint

33. Admit only that Queen Long has ownership rights to the designs and physical molds, and deny any and all remaining allegations set forth in Paragraph 33 of the Complaint.

34. State that they lack knowledge or information sufficient to enable them to respond to the allegations set forth in Paragraph 34 of the Complaint.

35. Deny the allegations set forth in Paragraph 35 of the Complaint.

36. Deny the allegations set forth in Paragraph 36 of the Complaint.

37. Admit only that Queen Long predominantly sells the yachts it manufactures through dealers, and deny any and all remaining allegations set forth in Paragraph 37 of the Complaint.

38. Admit only that Queen Long has been building yachts since before 1998, and deny any and all other allegations set forth in Paragraph 38 of the Complaint.

39. State that they lack knowledge or information sufficient to enable them to respond to the allegations set forth in Paragraph 39 of the Complaint.

40. Admit only that Queen Long is generally able to complete commissioned yachts within one year or less and that Queen Long built yachts for an agreed price, and deny the remaining allegations set forth in Paragraph 40 of the Complaint.

41. Deny the allegations set forth in Paragraph 41 of the Complaint.

42. Deny the allegations set forth in Paragraph 42 of the Complaint.

43. Admit only that Plaintiff was responsible for the "commissioning" work on the yachts it ordered from Queen Long, and deny and all other allegations set forth in Paragraph 43 of the Complaint.

44. State that they lack knowledge or information sufficient to enable them to respond to the allegations set forth in Paragraph 44 of the Complaint.

45. Deny the allegations set forth in Paragraph 45 of the Complaint.

<u>Interference by Queen Long and Hylas Yachts International with the Existing and Prospective Advantageous Contractual and Business Relations of Hylas Yachts[1]</u>

46. Deny the allegations set forth in Paragraph 46 of the Complaint.

47. Deny the allegations set forth in Paragraph 47 of the Complaint.

48. Admit only that Queen Long sent a letter to Plaintiff on November 3, 2016, which speaks for itself, and deny any and all remaining allegations set forth in Paragraph 48 of the Complaint.

---

[1] Defendants maintain the language of Plaintiff's heading solely for the convenience of the Court in reviewing this Answer and do not thereby intend to admit or endorse any allegations contained therein.

49. Admit only that Queen Long terminated any and all rights Plaintiff may have had to market the brand "Hylas" on November 3, 2016, and deny any and all remaining allegations set forth in Paragraph 49 of the Complaint.

50. Admit only that Queen Long terminated its business relationship with Plaintiff, and deny any and all remaining allegations set forth in Paragraph 50 0f the Complaint.

51. Deny the allegation set forth in Paragraph 51 of the Complaint.

52. Deny the allegations set forth in Paragraph 52 of the Complaint.

53. Deny the allegations set forth in Paragraph 53 of the Complaint.

54. Deny the allegations set forth in Paragraph 54 of the Complaint.

55. Deny the allegations set forth in Paragraph 55 of the Complaint.

56. Admit only that Hylas International currently markets Hylas brand yachts, and deny any and all remaining allegations.

57. Admit only that Hylas International currently markets Hylas brand yachts and that Hylas International participated in the 2017 Newport International Boat Show, and deny any and all remaining allegations.

58. Admit only that Hylas International is currently marketing Hylas brand yachts, and deny any and all remaining allegations set forth in Paragraph 58 of the Complaint.

## COUNT I:  BREACH OF CONTRACT AS TO DEFENDANT QUEEN LONG

59. Repeat, restate, and incorporate by reference herein their response to Paragraphs 1 – 58, inclusive.

60. Deny the allegations set forth in Paragraph 60 of the Complaint.

61. Deny the allegations set forth in Paragraph 61 of the Complaint.

62. Deny the allegations set forth in Paragraph 62 of the Complaint.

63. Deny the allegations set forth in Paragraph 63 of the Complaint.

64. Deny the allegations set forth in Paragraph 64 of the Complaint.

65. Deny the allegations set forth in Paragraph 65 of the Complaint.

66. Deny the allegations set forth in Paragraph 65 of the Complaint.

67. Deny the allegations set forth in Paragraph 67 of the Complaint.

68. Deny the allegations set forth in Paragraph 68 of the Complaint.

## COUNT II:  BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING AS TO QUEEN LONG

69. Repeat, restate, and incorporate by reference herein their response to Paragraphs 1 – 68, inclusive.

70. State that Paragraph 70 is a legal conclusion to which no response is required from Defendants; to the extent a response is required, Defendants admit the allegations.

71. Deny the allegations set forth in Paragraph 71 of the Complaint.

72. Deny the allegations set forth in Paragraph 72 of the Complaint.

## COUNT III:  TORTIOUS INTERFERENCE WITH PROSPECTIVE ADVANATAGE AS TO QUEEN LONG AND HYLAS YACHTS INTERNATIONAL

73. Repeat, restate, and incorporate by reference herein their response to Paragraphs 1 – 72, inclusive.

74. Deny the allegations set forth in Paragraph 74 of the Complaint.

75. Deny the allegations set forth in Paragraph 75 of the Complaint.

76. Deny the allegations set forth in Paragraph 76 of the Complaint.

77. Deny the allegations set forth in Paragraph 77 of the Complaint.

78. Deny the allegations set forth in Paragraph 78 of the Complaint.

79. Deny the allegations set forth in Paragraph 79 of the Complaint.

80. Deny the allegations set forth in Paragraph 80 of the Complaint.

81. Deny the allegations set forth in Paragraph 72 of the Complaint.

82. Deny the allegations set forth in Paragraph 82 of the Complaint.

83. Deny the allegations set forth in Paragraph 83 of the Complaint.

84. Deny the allegations set forth in Paragraph 84 of the Complaint.

85. Deny the allegations set forth in Paragraph 85 of the Complaint.

86. Deny the allegations set forth in Paragraph 86 of the Complaint.

87. Deny the allegations set forth in Paragraph 87 of the Complaint.

## COUNT IV:  TORTIOUS INTERFERENCE WITH EXISTING CONTRACTUAL RELATIONS AS TO QUEEN LONG HYLAS YACHTS INTERNATIONAL

88. Repeat, restate, and incorporate by reference herein their response to Paragraphs 1 – 87, inclusive.

89. Deny the allegations set forth in Paragraph 89 of the Complaint.

90. Deny the allegations set forth in Paragraph 90 of the Complaint.

91. Deny the allegations set forth in Paragraph 91 of the Complaint.

92. Deny the allegations set forth in Paragraph 92 of the Complaint.

93. Deny the allegations set forth in Paragraph 93 of the Complaint.

94. Deny the allegations set forth in Paragraph 94 of the Complaint.

95. Deny the allegations set forth in Paragraph 95 of the Complaint.

96. Deny the allegations set forth in Paragraph 96 of the Complaint.

97. Deny the allegations set forth in Paragraph 97 of the Complaint.

98. Deny the allegations set forth in Paragraph 98 of the Complaint.

99. Deny the allegations set forth in Paragraph 99 of the Complaint.

100.    Deny the allegations set forth in Paragraph 100 of the Complaint.

101.    Deny the allegations set forth in Paragraph 101 of the Complaint.

102.   Deny the allegations set forth in Paragraph 102 of the Complaint.

103.   Deny the allegations set forth in Paragraph 103 of the Complaint.

## COUNT V:  UNJUST ENRICHMENT AGAINST DEFENDANTS QUEEN LONG AND HYLAS YACHTS INTERNATIONAL

104.   Repeat, restate, and incorporate by reference herein their response to Paragraphs 1 – 103, inclusive.

105.   Deny the allegations set forth in Paragraph 105 of the Complaint.

106.   Deny the allegations set forth in Paragraph 106 of the Complaint.

107.   Deny the allegations set forth in Paragraph 107 of the Complaint.

108.   Deny the allegations set forth in Paragraph 108 of the Complaint.

109.   Deny the allegations set forth in Paragraph 109 of the Complaint.

110.   Deny the allegations set forth in Paragraph 110 of the Complaint.

111.   Deny the allegations set forth in Paragraph 111 of the Complaint.

## COUNT VI:  QUANTUM MERUIT: AGAINST DEFENDANTS QUEEN LONG AND HYLAS YACHTS INTERNATIONAL

112.   Repeat, restate, and incorporate by reference herein their response to Paragraphs 1 – 111, inclusive.

113.   Deny the allegations set forth in Paragraph 113 of the Complaint.

114.   Deny the allegations set forth in Paragraph 114 of the Complaint.

115.   Deny the allegations set forth in Paragraph 115 of the Complaint.

116.   Deny the allegations set forth in Paragraph 116 of the Complaint.

## COUNT VII:  VIOLATION OF THE MASSACHUSETTS GENERAL LAWS SECTION 93A §§ 2 AND 11 AGAINST DEFENDANTS QUEEN LONG AND HYLAS YACHTS INTERNATIONAL

117.   Repeat, restate, and incorporate by reference herein their response to Paragraphs 1 – 116, inclusive.

118.    State that they lack knowledge or information sufficient to enable them to respond

to the allegations set forth in Paragraph 118 of the Complaint.

119.    State that Paragraph 119 is a legal conclusion to which no response is required from

Defendants; to the extent a response is required, Defendants deny the allegations.

120.    State that Paragraph 120 is a legal conclusion to which no response is required from

Defendants.

121.    State that Paragraph 121 is a legal conclusion to which no response is required from

Defendants; to the extent a response is required, Defendants deny the allegations.

122.    Deny the allegations set forth in Paragraph 122 of the Complaint.

123.    Deny the allegations set forth in Paragraph 123 of the Complaint.

124.    Deny the allegations set forth in Paragraph 124 of the Complaint.

125.    Deny the allegations set forth in Paragraph 125 of the Complaint.

126.    Deny the allegations set forth in Paragraph 126 of the Complaint.

127.    Admit only that Queen Long manufactures vessels using designs for which it

exclusively holds the license to use, and deny any and all other allegations set forth in

Paragraph 127 of the Complaint.

128.    Deny the allegations set forth in Paragraph 128 of the Complaint.

129.    Deny the allegations set forth in Paragraph 129 of the Complaint.

130.    Deny the allegations set forth in Paragraph 130 of the Complaint.

131.    Deny the allegations set forth in Paragraph 131 of the Complaint.

132.    State that they lack knowledge or information sufficient to enable them to respond

to the allegations set forth in Paragraph 132 of the Complaint.

133.    Deny the allegations set forth in Paragraph 133 of the Complaint.

134.   Deny the allegations set forth in Paragraph 134 of the Complaint.

135.   Deny the allegations set forth in Paragraph 135 of the Complaint.

136.   Deny the allegations set forth in Paragraph 136 of the Complaint.

137.   Deny the allegations set forth in Paragraph 137 of the Complaint.

138.   Deny the allegations set forth in Paragraph 138 of the Complaint.

139.   Deny the allegations set forth in Paragraph 139 of the Complaint.

140.   Deny the allegations set forth in Paragraph 140 of the Complaint.

141.   Deny the allegations set forth in Paragraph 141 of the Complaint.

## COUNT VIII:  CIVIL CONSPIRACY BY AND BETWEEN QUEEN LONG AND HYLAS YACHTS INTERNATIONAL

142.   Repeat, restate, and incorporate by reference herein their response to Paragraphs 1

– 141, inclusive.

143.   Deny the allegations set forth in Paragraph 143 of the Complaint.

144.   Deny the allegations set forth in Paragraph 144 of the Complaint.

145.   Deny the allegations set forth in Paragraph 145 of the Complaint.

146.   Deny the allegations set forth in Paragraph 146 of the Complaint.

147.   Deny the allegations set forth in Paragraph 147 of the Complaint.

148.   Deny the allegations set forth in Paragraph 146 of the Complaint.

149.   Deny the allegations set forth in Paragraph 149 of the Complaint.

## COUNT IX:  FRAUD AS AGAINST QUEEN LONG

150.   Repeat, restate, and incorporate by reference herein their response to Paragraphs 1

– 149, inclusive.

151.   Deny the allegations set forth in Paragraph 151 of the Complaint.

152.     Admit only that Queen Long has engaged in good faith negotiations with Queen

Long for the dissolution of their business relationship since in or around January 2017,

and deny any and all remaining allegations of Paragraph 152 of the Complaint.

153.     State that they lack knowledge or information sufficient to enable them to respond

to the allegations set forth in Paragraph 153 of the Complaint.

154.     Admit only that Queen Long has engaged in good faith negotiations with Queen

Long for the dissolution of their business relationship since in or around January 2017,

and deny any and all remaining allegations of Paragraph 154 of the Complaint.

155.     Deny the allegations set forth in Paragraph 155 of the Complaint.

156.     Deny the allegations set forth in Paragraph 156 of the Complaint.

157.     Deny the allegations set forth in Paragraph 157 of the Complaint.

158.     Deny the allegations set forth in Paragraph 158 of the Complaint.

159.     Deny the allegations set forth in Paragraph 159 of the Complaint.

## COUNT X:  ACCOUNTING; DISGORGEMENT OF PROFIT BY BOTH DEFENDANTS

160.     Repeat, restate, and incorporate by reference herein their response to Paragraphs 1

– 159, inclusive.

161.     State that they lack knowledge or information sufficient to enable them to respond

to the allegations set forth in Paragraph 161 of the Complaint; to the extent a response

is required, Defendants deny the allegations set forth in Paragraph 161 of the Complaint.

162.     State that they lack knowledge or information sufficient to enable them to respond

to the allegations set forth in Paragraph 162 of the Complaint; to the extent a response

is required, Defendants deny the allegations set forth in Paragraph 162 of the Complaint.

163.    State that they lack knowledge or information sufficient to enable them to respond to the allegations set forth in Paragraph 163 of the Complaint; to the extent a response is required, Defendants deny the allegations set forth in Paragraph 163 of the Complaint.

164.    State that they lack knowledge or information sufficient to enable them to respond to the allegations set forth in Paragraph 164 of the Complaint; to the extent a response is required, Defendants deny the allegations set forth in Paragraph 164 of the Complaint.

165.    State that they lack knowledge or information sufficient to enable them to respond to the allegations set forth in Paragraph 165 of the Complaint; to the extent a response is required, Defendants deny the allegations set forth in Paragraph 165 of the Complaint.

166.    State that they lack knowledge or information sufficient to enable them to respond to the allegations set forth in Paragraph 166 of the Complaint; to the extent a response is required, Defendants deny the allegations set forth in Paragraph 166 of the Complaint.

## COUNT XI:  REQUEST FOR TEMPORARY RESTRAINING ORDER; PRELIMINARY AND PERMENANT INJUNCTION AGAINST BOTH DEFENDANTS

167.    Repeat, restate, and incorporate by reference herein their response to Paragraphs 1 – 166, inclusive.

168.    Deny the allegations set forth in Paragraph 168 of the Complaint.

169.    Deny the allegations set forth in Paragraph 169 of the Complaint.

170.    Deny the allegations set forth in Paragraph 170 of the Complaint.

171.    Deny the allegations set forth in Paragraph 171 of the Complaint.

172.    Deny the allegations set forth in Paragraph 172 of the Complaint.

173.    Deny the allegations set forth in Paragraph 173 of the Complaint.

174.    Deny the allegations set forth in Paragraph 174 of the Complaint.

175.    Deny the allegations set forth in Paragraph 175 of the Complaint.

176.    Deny the allegations set forth in Paragraph 176 of the Complaint.

177.    Deny the allegations set forth in Paragraph 177 of the Complaint.

178.    State that they lack knowledge or information sufficient to enable them to respond to the allegations set forth in Paragraph 178 of the Complaint; to the extent a response is required, Defendants deny the allegations set forth in Paragraph 178 of the Complaint.

179.    State that they lack knowledge or information sufficient to enable them to respond to the allegations set forth in Paragraph 179 of the Complaint; to the extent a response is required, Defendants deny the allegations set forth in Paragraph 179 of the Complaint.

180.    State that they lack knowledge or information sufficient to enable them to respond to the allegations set forth in Paragraph 180 of the Complaint; to the extent a response is required, Defendants deny the allegations set forth in Paragraph 180 of the Complaint.

## **GENERAL DENIAL**

Any allegation not specifically admitted herein is denied.

## **AFFIRMATIVE DEFENSES**

## **FIRST AFFIRMATIVE DEFENSE**

The Complaint fails to state any claims upon which relief can be granted.

## **SECOND AFFIRMATIVE DEFENSE**

Plaintiff is estopped from asserting some or all of the claims against Defendants.

## **THIRD AFFIRMATIVE DEFENSE**

Plaintiff is barred from equitable relief by the doctrine of unclean hands.

## **FOURTH AFFIRMATIVE DEFENSE**

Plaintiff has failed to mitigate its damages, if any.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because its damages, if any, were not due to any act or failure to act by Defendants, but were caused solely by Plaintiff's own acts.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because it never relied to its detriment on any alleged acts or omissions of Defendants.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff is judicially estopped from asserting Count VIII for "Civil Conspiracy by and between Queen Long and Hylas Yachts International" because it earlier alleges that "[Queen Long and Hylas Yachts International] act jointly and for the benefit of each other; there does not exist independence of judgment, ownership or financial interests" (Dkt. No. 1, ¶11) and "Hylas Yachts International is an agent of Queen Long which is acting with express authority by Queen Long" (Dkt. No. 1, ¶18) for the purposes of alleging personal jurisdiction over Hylas Yachts International.

## EIGHTH AFFIRMATIVE DEFENSE

The claims of Plaintiff are barred by the doctrine of unconscionability.

## NINTH AFFIRMATIVE DEFENSE

The claims of Plaintiff are barred by their misrepresentations.

## TENTH AFFIRMATIVE DEFENSE

The claims of Plaintiff are illusory.

## ELEVENTH AFFIRMATIVE DEFENSE

The claims of Plaintiff are barred by the intent to deceive and confuse.

## TWELFTH AFFIRMATIVE DEFENSE

The claims of Plaintiff are barred because Plaintiff acted in bad faith.

### THIRTEENTH AFFIRMATIVE DEFENSE

The claims of Plaintiff are barred by the doctrine of set-off and recoupment.

### FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff's Count VII for violation of the Massachusetts General Laws Section 93A §§ 2 and 11 is barred because the actions and transactions constituting the alleged unfair method of competition or the unfair or deceptive act or practice did not occur primarily and substantially within Massachusetts.  *See e.g. Iantosca v. Benistar Admin Services, Inc.*, 738 F. Supp. 2d 212, 220-21 (D. Mass. 2010) (dismissing a claim because the alleged conduct did not occur substantially in Massachusetts).

### FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiff's Count IX for fraud fails because Plaintiff cannot base a cause of action on conduct and correspondence that occurred during settlement negotiations.

### SIXTEENTH AFFIRMATIVE DEFENSE

Some or all of Plaintiff's claims are barred by the statute of limitations.

### SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred for failure to perform or complete a condition precedent.

### EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because Plaintiff breached the contract.

### NINTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrine of waiver.

### TWENTIETH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because Defendants fully met their contractual obligations.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by misnomer of a party.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

Defendants intend to add and rely upon such other and further defenses as may become apparent during the discovery of this action and reserve the right to amend their answer to assert such defenses.

## PRAYERS FOR RELIEF

WHEREFORE, Defendants QUEEN LONG MARINE LTD. and HYLAS YACHTS INTERNATIONAL, LLC pray that this Court:

    a.   Enter judgment in their favor with respect to each claim asserted in the Complaint;

    b.   Award Defendants' their costs and expenses, including attorneys' fees; and

    c.   Grand Defendants such other and further relief as this Court deems just and proper.

**COUNTERCLAIMS AGAINST HYLAS YACHTS INC. AND
THIRD-PARTY COMPLAINT AGAINST KYLE JACHNEY AND CARIBBEAN
YACHT CHARTERS, INC.**

QUEEN LONG MARINE LTD. ("Queen Long"), by and through undersigned counsel, hereby files these Counterclaims against HYLAS YACHTS INC. ("HYI") and this Third-Party Complaint against Kyle Jachney, individually, and Caribbean Yacht Charters, Inc. ("CYC"), and in support therefore allege as follows:

### Jurisdiction and Parties

1. These Counterclaims and this Third-Party Complaint are for damages in excess of $75,000, exclusive of interest, costs, and attorneys' fees.

2. Counterclaim/Third-Party Plaintiff Queen Long is a Taiwanese company with its principal place of business in Taiwan.

3. Counterclaim Defendant HYI is a Massachusetts corporation with a principal place of business in Marblehead, Massachusetts.

4. Third-Party Defendant Kyle Jachney is an individual over the age of 18 who is a resident of Massachusetts.

5. Third-Party Defendant CYC is a Massachusetts company with its principal place of business in Needham, Massachusetts.

6. This Court has subject matter jurisdiction over the Counterclaims and Third-Party Complaint pursuant to 28 U.S.C. § 1332 because there is complete diversity between the parties.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

### Background Facts

8. Queen Long is a manufacturer of custom sailing yachts that was established in 1986.

9. Queen Long is the sole creator and manufacturer of the Hylas brand of sailing yachts.

10. Queen Long has been the sole owner of the Hylas trademark since 1986, up to and including today, and registered such trademark in 1986 with the United States Patent and Trademark Office.

11. As a general practice, Queen Long markets its yachts through various dealers around the world.

12. In or around 1998, Queen Long started working with HYI as one of its dealers.

13. Although Queen Long allowed HYI to market the Hylas brand using the Hylas trademark, Queen Long was always the sole owner of the Hylas trademark and HYI's use of the trademark was merely a revocable license.

14. Pursuant to HYI and Queen Long's course of dealing, HYI and only HYI contracted with HYI's clients for the purchase of Hylas yachts, and HYI was independently responsible for both setting the sale price for the yachts and rendering the full wholesale price to Queen Long for each yacht it sold.

15. Queen Long had no contractual relationship whatsoever with HYI's retail customers, including with regarding to warranties and payment obligations; Queen Long's only contractual relationship was with HYI.

16. Under this course of dealing, when a customer ordered a Hylas yacht through HYI, HYI would accept a down payment from the customer and then place an order for the yacht with Queen Long.

17. Pursuant to HYI and Queen Long's course of dealing, Queen Long required a 10% down payment of the wholesale price of a yacht before it would begin construction on the yacht.

18. Queen Long further required periodic payments throughout the construction process and ultimately required full payment of the wholesale price of the yacht before it would ship the yacht to HYI.

19. Under this agreement, HYI was solely responsible for performing, at its own expense, "commissioning" services for the vessels before they were delivered to the customer.

20. "Commissioning" a yacht is a process of finalizing the build process of a yacht and preparing it for delivery to the customer, generally including, without limitation, inventorying and installing accessories to the vessel (deck hardware, small electronics, fenders, etc.), procuring and installing sails on the vessel, testing the vessel's water and gas systems, and cleaning and waxing the vessel's deck and hull.

21. This method of operation worked for a number years until HYI began faltering on its payment obligations to Queen Long and ultimately started using the Hylas brand to defraud customers out of millions of dollars.

22. Queen Long officially ended its business relationship with HYI in November 2016 and expressly revoked HYI's authorization to use the Hylas trademark, name, and brand.

23. Despite express revocation of HYI's license to use the Hylas trademark, name, and/or brand, HYI and Kyle Jachney continue to market themselves through a website, www.hylasyachtsusa.com, which utilizes the Hylas brand and contains copyrighted materials owned by Queen Long.

24. Likewise, CYC continues to maintain the website, www.hylasyachtsusa.com, despite knowing that CYC, HYI and Jachney's authorization to use the Hylas trademark, name, and/or brand has been clearly and expressly revoked by Queen Long and despite receiving a cease and desist letter from Queen Long.

*Failure to Pay for Manufactured Vessels*

*The H56RS-3*

25. HYI first payment issue involved yacht hull number H56RS-3, for which HYI owes Queen Long $288,390. *A true and correct copy of Queen Long's invoice to HYI is attached hereto as **Exhibit 1***.

26. Relying on HYI's promises of payment, Queen Long delivered H56RS-3 to HYI; however, despite such promises of payment to Queen Long – up through at least July 2012 – HYI never remitted the final balance of the wholesale price of the H56RS-3 to Queen Long.

27. On information and belief, HYI received some or all the funds necessary to complete payment for the vessel from the customer, but it misappropriated the funds instead of paying them to Queen Long.

28. By failing to pay Queen Long the full wholesale price of the H56RS-3, HYI defaulted on its contractual obligations to Queen Long.

29. As of the date of filing, HYI continues to owe Queen Long $288,390 for the H56RS-3.

*The H56RG-12*

30. In or around 2013, HYI delivered yacht hull number H56RG-12 to HYI despite a payment balance of $533,685, based on HYI's promises that HYI would remit the monies owed to Queen Long after delivery.

31. However, in or around June 2013, HYI failed to remit the payment balance of $533,685 for H56RG-12 to Queen Long. *A true and correct copy of Queen Long's invoice to HYI is attached hereto as **Exhibit 2***.

21

32. Despite years of promising payment of the $533,685 balance for H56RG-12, as of the date of filing HYI continues to owe $533,685 to Queen Long for H56RG-12.

33. On information and belief, HYI received some or all of the funds necessary to complete payment for the vessel from the customer but misappropriated the funds instead of using them to render payment to Queen Long.

34. By failing to pay Queen Long the full wholesale price of the H56RG-12, HYI defaulted on its contractual obligations to Queen Long.

*HYI's Unperformed Contracts with Customers*

35. Starting in or around 2013, HYI began entering into sales contracts with retail customers for Hylas vessels and then failing to perform these contracts, despite taking millions of dollars from the customers for the vessels.

*The H63-6*

36. In or around February 2013, HYI executed a sales contract for sailing yacht H63-6 with a retail customer for the purchase price of $1,955,607.

37. HYI ordered the H63-6 from Queen Long, and Queen Long invoiced HYI a total wholesale price of $1,376,930 for the vessel.  *A true and correct copy of Queen Long's invoice to HYI is attached hereto as **Exhibit 3**.*

38. Despite collecting $900,000 from the customer for the H63-6, HYI only paid Queen Long a total of $100,000 toward the wholesale price of the vessel.

39. Furthermore, ***despite netting $800,000 of the customer's funds*** above the amount rendered to Queen Long for building the H63-6[2], HYI failed to make any further

---

[2] $900,000 (amount HYI collected from customer) - $100,000 (amount HYI paid Queen Long) = $800,000

payments to Queen Long, which were necessary to proceed with construction of the vessel.

40. By failing to pay Queen Long the full wholesale price of the H63-6, HYI defaulted on its contractual obligations to Queen Long.

41. Additionally, HYI's failure to pay Queen Long forced the customer to contact Queen Long directly regarding the status of the vessel.

42. Ultimately, in order to preserve the goodwill of the Hylas brand, at the customer's request, Queen Long agreed to sell the H63-6 directly to the customer in or around December 2016.

43. Pursuant to the new sale agreement, the customer paid $1,000,000 directly to Queen Long in exchange for Queen Long's agreement to complete and deliver the H63-6.

44. Because HYI had already fraudulently absconded with $800,000[3] of the customer's money, the total amount Queen Long received for building the vessel - $1,100,000[4] – did not cover the wholesale price of the vessel - $1,376,920, resulting in a deficiency of $276,920[5] that HYI is contractually obligated to pay to Queen Long for the wholesale price of the H63-6.

45. Due to HYI's fraudulent conduct, Queen Long has suffered irreparable harm to its business reputation and to the Hylas brand.

*The H63-5*

46. In or around June 2013, HYI executed a sales contract for sailing yacht H63-5 with a retail customer for the total purchase price of $1,500,000.

---

[3] $900,000 (amount HYI collected from customer) - $100,000 (amount HYI paid Queen Long) = $800,000
[4] $100,000 (from HYI) + $1,000,000 (from customer) = $1,100,000
[5] $1,376,920 (purchase price) - $1,100,000 (total amount paid to Queen Long) = $276,920

47. HYI ordered the H63-5 from Queen Long, and Queen Long invoiced HYI a total wholesale price of $1,366,165 for the vessel. *A true and correct copy of Queen Long's invoice to HYI is attached hereto as **Exhibit 4**.*

48. Despite collecting $450,000 from the customer for the H63-5, HYI only paid Queen Long a total of $101,300 toward the wholesale price of the vessel.

49. Furthermore, ***despite netting $348,700 of the customer's funds*** above the amount rendered to Queen Long for building the H63-5[6], HYI failed to timely perform the contract, forcing the customer to contact Queen Long directly regarding the vessel.

50. Ultimately, in order to preserve the goodwill of the Hylas brand, and at the customer's request, Queen Long agreed to sell the H63-5 directly to the customer in or around March 2017.

51. Pursuant to the purchase and sale agreement, the customer paid the remainder of the purchase price of the H63-5 - $1,150,000[7] – directly to Queen Long, and Queen Long completed and delivered the vessel for the client.

52. Because HYI had already fraudulently absconded with $348,700[8] of the customer's money, the total amount Queen Long received for building the vessel - $1,251,300[9] – did not cover the wholesale price of the vessel - $1,366,165, resulting in a deficiency of $114,865[10] that HYI is contractually obligated to pay to Queen Long for the wholesale price of the H63-5.

---

[6] $450,000 (amount HYI collected from customer) - $101,300 (amount HYI paid Queen Long) = $348,700
[7] $1,500,000 (retail price) - $450,000 (customer payments to HYI) = $1,150,000
[8] $450,000 (amount customer paid to HYI) - $101,300 (amount HYI paid to Queen Long)  = $348,700
[9] $101,300 (amount HYI paid to Queen Long) + $1,150,000 (amount customer paid to Queen Long) = $1,251,300
[10] $1,366,165 (wholesale price) - $1,251,300 (total amount paid to Queen Long) = $114,865.

53. In addition, because HYI did not perform the commissioning on the H63-5, as it was responsible for under its agreement with Queen Long, Queen Long was forced to incur an additional $148,259 in commissioning expenses for the H63-5.

54. Between the money HYI owes Queen Long for the wholesale price of the H63-5, $114,864, and the $148,865 in commissioning expenses Queen Long incurred for the H63-5, HYI is contractually bound to pay Queen Long a total of $263,124 for the H63-5.

55. By failing to pay Queen Long the full wholesale price of the H63-5 and failing to perform the commission work on the vessel, HYI defaulted on its contractual obligations to Queen Long.

56. Due to HYI's fraudulent conduct, Queen Long has suffered irreparable harm to its business reputation and to the Hylas brand.

*The H56-23*

57. In or around January 2015, HYI executed a sales contract for sailing yacht H56-23 with a retail customer.

58. HYI ordered the H56-23 from Queen Long, and Queen Long invoiced HYI a total wholesale price of $873,570 for the vessel.

59. Despite collecting $1,102,050 from the customer for the H56-23, HYI only paid Queen Long a total of $864,000 toward the wholesale price of the vessel, leaving a deficiency of $9,570[11] owed to Queen Long.

60. Moreover, ***despite netting $238,050 worth of the customer's funds*** above the amount it paid to Queen Long[12], HYI never commissioned the H56-23 for the customer.

---

[11] $873,570 (wholesale price) - $864,000 (amount HYI paid to Queen Long) = $9,570
[12] $1,102,050 (amount customer paid to HYI) - $864,000 (amount HYI paid to Queen Long) = $238,050

61. As a result, the retail buyer of the H56-23 was forced to pay hundreds of thousands of dollars of additional funds to third party vendors to complete the commissioning of the vessel.

62. Queen Long learned of HYI's failure to perform the commissioning services to the H56-23 in or around December 2016, when the retail customer contacted Queen Long directly.

63. By failing to pay Queen Long the full wholesale price of the H56-23 and failing to perform the commission work on the vessel, HYI defaulted on its contractual obligations to Queen Long.

64. In order to preserve the goodwill of the Hylas brand in the face of HYI's fraudulent conduct with regard to the H56-23, Queen Long ultimately paid the retail customer $50,000 to help cover the customer's out-of-pocket expenses for the commissioning work on the vessel.

65. Between the $9,570 owed for the wholesale price of the vessel and the $50,000 Queen Long paid to the retail customer to help cover the cost of the commissioning services that should have been performed by HYI, HYI is contractually bound to pay Queen Long $59,570 for the H56-23.

66. Due to HYI's fraudulent conduct, Queen Long has suffered irreparable harm to its business reputation and to the Hylas brand.

*The H56-25*

67. In or around February 2015, HYI executed a sales contract for sailing yacht H56-25 with a retail customer and accepted $194,400 in down payments for the vessel.

68. Although HYI ordered the H56-25 from Queen Long and agreed to remit the wholesale price of the vessel to Queen Long, HYI never paid *any money whatsoever* to Queen Long for the H56-25.

69. Thus, *despite taking $194,400 of the customer's money*, HYI failed to make *any* of the payments to Queen Long that were necessary to proceed with construction of the vessel.

70. By failing to pay Queen Long the wholesale price of the H56-25, HYI defaulted on its contractual obligations to Queen Long.

71. Additionally, HYI's failure to pay Queen Long forced the customer to contact Queen Long directly regarding the status of the vessel.

72. Ultimately, in order to preserve the goodwill of the Hylas brand, and at the customer's request, Queen Long agreed to sell the H56-25 directly to the customer in or around February 2018.

73. Pursuant to the new sale agreement, the customer paid Queen Long directly in exchange for Queen Long's agreement to complete and deliver the H56-25.

74. However, because HYI had fraudulently absconded with the customer's $194,400 deposit, Queen Long was forced to grant a $150,000 discount to the customer off of the wholesale price of the vessel.

75. Therefore, HYI's breach of contract regarding the H56-25 cost Queen Long $150,000 that it would have otherwise earned for the vessel, and HYI is contractually obligated to pay Queen Long $150,000.

76. Due to HYI's fraudulent conduct, Queen Long has suffered irreparable harm to its business reputation and to the Hylas brand.

*The H56-24*

77. In or around October 2015, HYI executed a sales agreement with a retail customer for sailing yacht H56-24.

78. HYI ordered the H56-24 from Queen Long, and Queen Long invoiced HYI a total wholesale price of $903,325 for the vessel.

79. Despite collecting $194,000 from the customer for the H56-24, HYI only paid Queen Long a total of $60,000 toward the wholesale price of the vessel.

80. Furthermore, ***despite netting $134,400 of the customer's funds*** above the amount rendered to Queen Long for building the H56-24[13], HYI failed to timely perform the contract, forcing the customer to contact Queen Long directly regarding the vessel.

81. Ultimately, in order to preserve the goodwill of the Hylas brand, and at the customer's request, Queen Long, agreed to sell the  H56-24 directly to the customer in or around January 2017.

82. Pursuant to the agreement, the customer paid $829,825 directly to Queen Long, and Queen Long completed and delivered the H56-24 for the customer.

83. However, because HYI had fraudulently absconded with $134,400 of the retail customer's money, the total amount Queen Long received for the H56-24 - $889,825[14] - was less than the wholesale price for the vessel - $903,325, leaving a deficiency of $13,500 that HYI is contractually obligated to pay to Queen Long.

84. By failing to pay Queen Long the full wholesale price of the H63-6, HYI defaulted on its contractual obligations to Queen Long.

---

[13] $194,400 (amount customer paid to HYI) - $60,000 (amount HYI paid to Queen Long) = $134,000
[14] $60,000 (amount HYI paid Queen Long) + $829,825 (amount customer paid Queen Long) = $889,825

85. Due to HYI's fraudulent conduct, Queen Long has suffered irreparable harm to its business reputation and to the Hylas brand.

*The H56-26*

86. In or around November 2015, HYI executed a sales contract for sailing yacht H56-26 with a retail customer.

87. HYI ordered the H56-26 from Queen Long and agreed to pay Queen Long's wholesale price for the vessel.

88. Despite collecting $263,000 from the customer for the H56-26, HYI only paid Queen Long a total of $69,000 toward the wholesale price of the vessel.

89. Furthermore, ***despite netting $193,000 of the customer's funds*** above the amount rendered to Queen Long for building the H56-26[15], HYI failed to timely perform the contract, forcing the customer to contact Queen Long directly regarding the vessel.

90. By failing to pay Queen Long the full wholesale price of the H56-26, HYI defaulted on its contractual obligations to Queen Long.

91. Additionally, HYI's failure to pay Queen Long forced the customer to contact Queen Long directly regarding the status of the vessel.

92. Ultimately, in order to preserve the goodwill of the Hylas brand, and at the customer's request, Queen Long agreed to sell the H56-26 directly to the customer in or around June 2017.

93. Pursuant to the new sale agreement, the customer paid Queen Long directly in exchange for Queen Long's agreement to complete and deliver the H56-26.

---

[15] $263,000 (amount customer paid to HYI) - $69,000 (amount HYI paid to Queen Long) = $193,000

94. However, because HYI had fraudulently absconded with $193,000 of the customer's money, Queen Long was forced to grant a $100,000 discount to the customer off of the wholesale price of the vessel.

95. Therefore, HYI's breach of contract regarding the H56-26 cost Queen Long $100,000 that it would have otherwise earned for the vessel, and HYI is contractually obligated to pay Queen Long $100,000.

96. Due to HYI's fraudulent conduct, Queen Long has suffered irreparable harm to its business reputation and to the Hylas brand.

*The H56-27*

97. In or around February 2016, HYI executed a sales contract for sailing yacht H56-27 with a retail customer and accepted $115,000 in down payments for the vessel.

98. Although HYI ordered the H56-27 from Queen Long and agreed to remit the wholesale price of the vessel to Queen Long, HYI never paid ***any money whatsoever*** to Queen Long for the H56-27.

99. Thus, ***despite taking $115,000 of the customer's money***, HYI failed to make ***any*** of payments to Queen Long that were necessary to proceed with construction of the vessel.

100.    By failing to pay Queen Long the wholesale price of the H56-27, HYI defaulted on its contractual obligations to Queen Long.

101.    Additionally, HYI's failure to pay Queen Long forced the customer to contact Queen Long directly regarding the status of the vessel.

102.    Ultimately, in order to preserve the goodwill of the Hylas brand, and at the customer's request, Queen Long agreed to sell the H56-27 directly to the customer in or around September 2017.

103.    Pursuant to the new sale agreement, the customer paid Queen Long directly in exchange for Queen Long's agreement to complete and deliver the H56-27.

104.    However, because HYI had fraudulently absconded with the customer's $115,000 deposit, Queen Long was forced to grant a $100,000 discount to the customer off of the wholesale price of the vessel.

105.    Therefore, HYI's breach of contract regarding the H56-27 cost Queen Long $100,000 that it would have otherwise earned for the vessel, and HYI is contractually obligated to pay Queen Long $100,000.

106.    Due to HYI's fraudulent conduct, Queen Long has suffered irreparable harm to its business reputation and to the Hylas brand.

### *Fraudulent Orders for Hylas Sailing Yachts*

107.    On information and belief, in or around 2015, HYI began collecting down payments for Hylas yachts from customers without actually placing orders for the yachts with Queen Long; in effect, HYI was using the Hylas brand to defraud customers out of millions of dollars.

108.    Queen Long did not learn about HYI's fraud on the customers until in or around 2016, when customers began contacting Queen Long directly to inquire into the status of their vessels and/or what happened to their deposit funds.

109.    On information and belief, these customers began contacting Queen Long directly because HYI was not returning their communications.

*The Unnamed H63*

110.    In or around 2015, HYI executed a sales contract for a Hylas H63 sailing yacht and collected a $194,500 down payment from the customer.

31

111.     HYI never placed an order for the H63 yacht with Queen Long or issued a down payment to Queen Long that would be required for construction to begin on the yacht.

112.     In or around April 2016, after the customer contacted Queen Long directly, Queen Long learned of the contract for the first time and found out that HYI had stopped communicating with the customer.

113.     As of the date of filing, HYI has not returned the customer's down payment and no vessel has been delivered to the customer.

114.     Due to HYI's fraudulent conduct, Queen Long has suffered irreparable harm to its business reputation and to the Hylas brand.

*The H63-9*

115.     In or around January 2016, HYI executed sales contract with RM Adventures, LLC for the purchase of Hylas sailing yacht H63-9 and accepted a $100,000 down payment from the customer.

116.     HYI never placed an order for the H63-9 yacht with Queen Long or issued a down payment to Queen Long that would be required for construction to begin on the yacht, nor has HYI returned the down payment to RM Adventures.

117.     On March 16, 2017, RM Adventures filed suit in the Essex Superior Court against HYI and its principal, Kyle Jachney, for fraud and breach of contract related to the H63-9 transaction.

118.     RM Adventures has moved to intervene in the present litigation. *See* D.E. 21-26.

119.     Due to HYI's fraudulent conduct, Queen Long has suffered irreparable harm to its business reputation and to the Hylas brand.

*The H56-28*

120.    In or around July 2016, HYI executed a sales contract for sailing yacht H56-28 and collected a $100,000 down payment from the customer.

121.    HYI never placed an order for the H56-28 with Queen Long or paid Queen Long the down payment to Queen Long that would be required for construction to begin on the vessel.

122.    On information and belief, HYI never returned the customer's down payment and no vessel has been delivered to the customer.

123.    Due to HYI's fraudulent conduct, Queen Long has suffered irreparable harm to its business reputation and to the Hylas brand.

### Fraudulent Orders for "Hylas" Motor Yachts

124.    On information and belief, in or around 2014 HYI began marketing "Hylas" brand motor yachts to customers without Queen Long's knowledge or authorization to use the Hylas trademark.

125.    Without Queen Long's knowledge or consent, HYI entered into contracts with numerous customers for "Hylas" brand 56-foot motor yachts, which HYI marketed as the "Hylas 56 Express Cruiser."

126.    To be clear, at the time HYI was peddling the "Hylas 56 Express Cruiser" to retail customers *no such vessel existed within the Hylas fleet* and Queen Long was not manufacturing *any* 56-foot motor yachts whatsoever.

127.    Queen Long did not learn about the motor yacht contracts – which bore the unauthorized guaranty that Queen Long would be the manufacturer of the yachts – until several years later in 2016, when customers began contacting Queen Long directly asking about the status of their yachts.

128.    HYI's use of the Hylas brand and Queen Long's name to make fraudulent

misrepresentations in its contracts with retail customers and to induce customers to pay

down payments on orders for these non-existent motor yachts has been especially

damaging to Queen Long's reputation because many of the defrauded customers were

current or prior owners of Hylas yachts who were loyal to Queen Long and the Hylas

brand.

*The First Phantom "Hylas 56 Express Cruiser"*

129.    In or around September 2014, HYI executed a contract for a "Hylas" motor yacht

and accepted a $320,000 down payment from the customer.

130.    HYI never ordered the motor yacht from Queen Long or even disclosed the contract

to Queen Long.

131.     As of the date of filing, HYI has neither delivered the motor yacht nor returned the

customer's $320,000 deposit.

132.    Due to HYI's fraudulent conduct, Queen Long has suffered irreparable harm to its

business reputation and to the Hylas brand.

*The Second Phantom "Hylas 56 Express Cruiser"*

133.    In or around March 2016, HYI executed a contract for a "Hylas" motor yacht with

David and Rona Comroe and accepted a $120,000 down payment from them.

134.    HYI never ordered the Comroe motor yacht from Queen Long or even disclosed

the contract to Queen Long.

135.    On January 11, 2017, the Comroes sued HYI and its principles, Kyle Jachney and

Richard Jachney, in the Southern District of Florida for breach of contract, unjust

enrichment, fraudulent misrepresentation, fraud in the inducement, and fraudulent

34

concealment regarding the motor yacht transaction. *See David Comroe & Rona Comroe vs. Hylas Yachts, Inc., Kyle Jachney, & Richard Jachney*, Case No. 1:17-cv-20129 (S.D. Fla.).

136.    The Comroe litigation ultimately concluded with a final consent judgment wherein HYI agreed to pay the Comroes $150,000.00.

137.    Due to HYI's fraudulent conduct, Queen Long has suffered irreparable harm to its business reputation and to the Hylas brand.

*The Third Phantom "Hylas 56 Express Cruiser"*

138.    On information and belief, HYI additionally contracted with a third customer for the sale of a "Hylas" motor yacht and accepted a $240,000 down payment from that customer.

139.    As with the other motor yachts, the third motor yacht was never ordered from Queen Long and has never been delivered to the customer.

140.    Due to HYI's fraudulent conduct, Queen Long has suffered irreparable harm to its business reputation and to the Hylas brand.

### *The Marketing Expenses*

141.    As part of the dealership agreement between Queen Long and HYI, Queen Long allowed HYI to use Hylas vessels and the Hylas brand in its marketing efforts to generate business for HYI's dealership.

142.    As part of its marketing efforts, HYI exhibited Hylas yachts at boat shows in the United States, including the Newport International Boat Show in Newport, Rhode Island ("Newport Boat Show"), one of the biggest sailing yacht shows in the United States.

143.    HYI also purchased advertisements for its dealership in various online and print publications.

144.    Pursuant to the course of dealing between HYI and Queen Long, under the dealership agreement between the Parties, HYI was solely responsible for paying for its own marketing expenses, and Queen Long was not a party to HYI's contracts with third-party vendors for its marketing activities.

145.    This arrangement worked for several years, until HYI began failing to pay the boat show operators and other vendors the fees that it owed them.

146.    On information and belief, HYI failed to render payment for its entrance and related fees for the 2016 Newport Boat Show.

147.    Since Queen Long was not a party to the contract between HYI and the Newport Boat Show, Queen Long did not learn of HYI's delinquency until 2017, when a representative of the boat show contacted Queen Long directly regarding HYI's outstanding payment obligations.

148.    In or around June 2017, Queen Long received notice from the Newport Boat Show that HYI had a large outstanding balance from the 2016 boat show, and the operators requested payment from Queen Long for HYI's debts.

149.    Due to HYI's failure to meet its payment obligations to the Newport Boat Show, Queen Long was forced to pay $4,000 to the boat show organizers in order to preserve Queen Long's relationship with the show operators and to prevent further damage to the reputation of the Hylas brand.

150.    Additionally, beginning in or around 2017, Queen Long learned that HYI had outstanding debts to numerous print and online publications.

151.    Because HYI had used the Hylas brand in its advertisements, these vendors requested payment from Queen Long for HYI's debt.

152.    Additionally, these vendors placed restrictions on the ability of other dealers of Hylas yachts to place advertisements with them.

153.    In addition to the financial costs of HYI's fraudulent conduct toward the 2016 Newport Boat Show and other vendors within the sailing yacht community, HYI's conduct damaged the Hylas brand and Queen Long's business reputation within the sailing yacht community.

### *The Hull Molds*

154.    Queen Long has a long-standing business relationship with naval architect in Argentina, Germán Frers, who has designed multiple vessel plans for Queen Long.

155.    During the course of their business relationship and for their mutual benefit of adding to the Hylas fleet, Queen Long and HYI jointly contributed to the initial design fees and hull mold manufacturing costs for three new hull designs for a 56-foot model sailing yacht, a 63-foot model sailing yacht, and a 70-foot model sailing yacht (the "Hull Molds").

156.    In exchange for HYI's contribution to the design fees and mold manufacturing, HYI was allowed to purchase 56-foot, 63-foot and 70-foot vessels from Queen Long at discounted wholesale pricing and was also allowed to market such vessels for resale in the United States.

157.    Queen Long has always been the sole party with a contractual relationship with Germán Frers and/or his firm, Frers Naval Architecture and Engineering (collectively, "Frers"), regarding the Hull Molds.

158.     The Hull Molds were designed by Frers and were constructed solely pursuant to Frers' designs, plans and/or specifications.

159.     Pursuant to Queen Long's contracts with Frers for the Hull Molds, Queen Long has an obligation to pay Frers a royalty fee each time Queen Long uses one of the molds to build a vessel.

160.     Queen Long is the only party who has ever paid royalty fees to Frers for use of the Hull Molds.

161.     To date, Queen Long has paid Frers $1,404,776 in royalties for use of the Hull Molds, *to which HYI has never contributed*.

162.     Queen Long is also the only party who has ever held a license from Frers to use the Hull Molds.

163.     At all times Queen Long has maintained sole possession of the Hull Molds, and Queen Long has solely borne all expenses for maintenance and storage of the Hull Molds since they were created.

164.     In or around 2016, Queen Long learned that HYI and its principals had been representing to third-parties that HYI held an ownership interest in the Hull Molds.

165.     In fact, on information and belief, HYI and its principals have pledged HYI's "ownership interest" in the Hull Molds as collateral to one or more of HYI's third-party creditors.

166.     HYI has confirmed its claim of an "ownership interest" in the Hull Molds in the present litigation.

167.    Notably, despite HYI's claims to "own" the intellectual property rights of the Hull Molds, the actual rights at issue are licensing rights to use the Hull Molds; the owner of the underlying intellectual property is Frers.

168.    Notwithstanding HYI's claims in the present litigation, HYI's representations of its "ownership interest" in the Hull Molds is a genuine and pressing concern to Queen Long because HYI has been found liable in multiple lawsuits by its former customers, HYI is the subject of pending litigation by its former customers, and HYI has numerous other third-party creditors.

169.    Therefore, there is a real and substantial risk that Queen Long could be forced to defend its ownership of the Hull Molds against the claims of third-parties looking for a means of recouping their losses at the hands of HYI.

**Count 1:  Breach of Contract Against HYI – H56RS-3**

170.    Queen Long re-alleges and incorporates by reference herein Paragraphs 1 – 169, above.

171.    Queen Long and HYI had a valid contract for purchase of the H56RS-3, under which Queen Long agreed to manufacture the custom sailing yacht H56RS-3 pursuant to HYI's order, in exchange for HYI's agreement to pay Queen Long a wholesale price of $653,390.00.

172.    Queen Long fulfilled its contractual obligations by manufacturing H56RS-3 and delivering it to HYI.

173.    HYI breached the contract by failing to pay Queen Long $288,390.00 of the contracted price for H56RS-3.

174.     As a direct and proximate result of HYI's material breach of contract, Queen Long has suffered damages, including without limitation, the $288,390.00 still owed under the contract, and other compensatory and consequential damages.

## Count 2:  Breach of the Covenant of Good Faith and Fair Dealing Against HYI – H56RS-3

175.     Queen Long re-alleges and incorporates by reference herein Paragraphs 1 – 169, above.

176.     Queen Long and HYI had a valid and enforceable agreement under which Queen Long agreed to manufacture the H56RS-3 in exchange for HYI paying Queen Long the wholesale price of the vessel.

177.     Queen Long fully performed its obligations under the agreement by completing the manufacture of the H56RS-3.

178.     By misrepresenting to Queen Long that it would complete payment of the whole sale price of the H56RS-3 in order to induce Queen Long to deliver the vessel, even though it knew or should have known that it would not or could not make the payment, HYI breached the covenant of good faith and fair dealing.

179.     By accepting money from the retail customer and misappropriating that money instead of remitting it to Queen Long for the manufacture of the H56RS-3, HYI breached the covenant of good faith and fair dealing.

180.     As a direct and proximate result of the foregoing, Queen Long has suffered damages in an amount to be determined at trial.

## Count 3:  Unjust Enrichment Against HYI – H56RS-3

181.     Queen Long re-alleges and incorporates by reference herein Paragraphs 1 – 169, above.

182.    This claim is brought in the alternative to the breach of contract claim regarding the H56RS-3.

183.    HYI benefitted from receiving the H56RS-3, which was manufactured by Queen Long, and selling it to the retail customer for a markup retail price.

184.    HYI failed to pay Queen Long the full wholesale price for the H56RS-3, leaving a deficit of $288,390 still owed to Queen Long for the vessel.

185.    HYI was enriched by receiving the full value of the H56RS-3 without paying Queen Long $288,390 of the wholesale price of the vessel.

186.    It is against the fundamental principles of justice, equity, and good conscience to permit HYI to retain the $288,390 still owed to Queen Long for the H56RS-6.

**Count 4:  Fraudulent Inducement Against HYI & Jachney – H56RS-3**

187.    Queen Long re-alleges and incorporates by reference herein Paragraphs 1 – 169, above.

188.    HYI and Jachney repeatedly promised Queen Long that HYI would pay Queen Long the $288,390 balance of the wholesale price for H56RS-3.

189.    At the time HYI and Jachney represented to Queen Long that HYI would pay the balance of the wholesale price of H56RS-3, HYI and Jachney knew that HYI would not, or could not, pay Queen Long the outstanding monies owed for the H56RS-3.

190.    HYI and Jachney misrepresented HYI's ability to pay the balance for the wholesale price of H56RS-3 with the intent of inducing Queen Long to ship the vessel to HYI.

191.    Relying on HYI and Jachney's misrepresentations that HYI would pay the balance of the wholesale price for H56RS-3, Queen Long shipped the vessel to HYI.

192.    As a direct and proximate result of HYI and Jachney's fraudulent misrepresentations, Queen Long has suffered damages, including without limitation, the loss of the outstanding balance for H56RS-3 - $288,390, the loss of the value of H56RS-3, which otherwise could have served as collateral for payment of the balance due on the vessel, and other compensatory and consequential damages.

### Count 5:  Breach of Contract Against HYI – H56RG-12

193.    Queen Long re-alleges and incorporates by reference herein Paragraphs 1 – 169, above.

194.    Queen Long and HYI had a valid contract for purchase of the H56RG-12, under which Queen Long agreed to manufacture the custom sailing yacht H56RG-12 pursuant to HYI's order, in exchange for HYI's agreement to pay Queen Long a wholesale price of $710,985.00.

195.    Queen Long fulfilled its contractual obligations by manufacturing H56RS-3 and delivering it to HYI.

196.    HYI breached the contract by failing to pay Queen Long $533,685.00 of the contracted price for H56RG-12.

197.    As a direct and proximate result of HYI's material breach of contract, Queen Long has suffered damages, including without limitation, the $533,685.00 still owed for the H56RG-12 under the contract, and other compensatory and consequential damages.

### Count 6:  Breach of the Covenant of Good Faith and Fair Dealing Against HYI – H56RG-12

198.    Queen Long re-alleges and incorporates by reference herein Paragraphs 1 – 169, above.

199.    Queen Long and HYI had a valid and enforceable agreement under which Queen Long agreed to manufacture the H56RG-12 in exchange for HYI paying Queen Long the wholesale price of the vessel.

200.    Queen Long fully performed its obligations under the agreement by completing the manufacture of the H56RG-12.

201.    By misrepresenting to Queen Long that it would complete payment of the whole sale price of the H56RG-12 in order to induce Queen Long to deliver the vessel, even though it knew or should have known that it would not or could not make the payment, HYI breached the covenant of good faith and fair dealing.

202.    By accepting money from the retail customer and misappropriating that money instead of remitting it to Queen Long for the manufacture of the H56RS-3, HYI breached the covenant of good faith and fair dealing.

203.    As a direct and proximate result of the foregoing, Queen Long has suffered damages in an amount to be determined at trial.

**Count 7:  Unjust Enrichment Against HYI – H56RG-12**

204.    Queen Long re-alleges and incorporates by reference herein Paragraphs 1 – 169, above.

205.    This claim is brought in the alternative to the breach of contract claim regarding the H56RG-12.

206.    HYI benefitted from receiving the H56RG-12, which was manufactured by Queen Long, and selling it to the retail customer for a markup retail price.

207.    HYI failed to pay Queen Long the full wholesale price for the H56RG-12, leaving a deficit of $533,685 still owed to Queen Long for the vessel.

208.   HYI was enriched by receiving the full value of the H56RG-12 without paying Queen Long $533,685 of the wholesale price of the vessel.

209.   It is against the fundamental principles of justice, equity, and good conscience to permit HYI to retain the $533,685 still owed to Queen Long for the H56RG-12.

**Count 8:  Fraudulent Inducement Against HYI & Jachney – H56RG-12**

210.   Queen Long re-alleges and incorporates by reference herein Paragraphs 1 – 169, above.

211.   HYI and Jachney repeatedly promised Queen Long that HYI would pay Queen Long the $533,685 balance of the wholesale price for H56RG-12.

212.   At the time HYI and Jachney represented to Queen Long that HYI would pay the balance of the wholesale price of H56RG-12, HYI and Jachney knew that HYI would not, or could not, pay Queen Long the outstanding monies owed for the H56RG-12.

213.   HYI and Jachney misrepresented HYI's ability to pay the balance for the wholesale price of H56RG-12 with the intent of inducing Queen Long to ship the vessel to HYI.

214.   Relying on HYI and Jachney's misrepresentations that HYI would pay the balance of the wholesale price for H56RG-123, Queen Long shipped the vessel to HYI.

215.   As a direct and proximate result of HYI and Jachney's fraudulent misrepresentations, Queen Long has suffered damages, including without limitation, the loss of the outstanding balance for H56RG-12 - $533,685, the loss of the value of H56RG-12, which otherwise could have served as collateral for payment of the balance due on the vessel, and other compensatory and consequential damages.

## Count 9:  Breach of Contract Against HYI – H63-6

216.    Queen Long re-alleges and incorporates by reference herein Paragraphs 1 – 169, above.

217.    Queen Long and HYI had a valid contract for purchase of the H63-6, under which Queen Long agreed to manufacture the custom sailing yacht H63-6 pursuant to HYI's order, in exchange for HYI's agreement to pay Queen Long a wholesale price of $1,376,920.

218.    Queen Long fulfilled its contractual obligations by manufacturing and delivering the H63-6.

219.    HYI breached the contract by failing to pay Queen Long $1,276,920 of the contracted price for H63-6.

220.    Despite recouping $1,000,000 of the funds from the retail customer, as a direct and proximate result of HYI's material breach of contract, Queen Long has suffered damages, including without limitation, the $276,920 still owed under the contract, compensatory and consequential damages, and damage to business reputation.

## Count 10:  Breach of the Covenant of Good Faith and Fair Dealing Against HYI – H63-6

221.    Queen Long re-alleges and incorporates by reference herein Paragraphs 1 – 169, above.

222.    Queen Long and HYI had a valid and enforceable agreement under which Queen Long agreed to manufacture the H63-6 in exchange for HYI paying Queen Long the wholesale price of the vessel.

223.    Queen Long and HYI also had a valid and enforceable agreement whereby Queen
Long allowed HYI limited authorization to utilize the Hylas brand and trademark to
market Hylas yachts.

224.    Queen Long fully performed its obligations under the agreement by completing the
manufacture of the H63-6.

225.    By accepting money from the retail customer and misappropriating that money
instead of remitting it to Queen Long for the manufacture of the H63-6, HYI breached
the covenant of good faith and fair dealing.

226.    By employing the Hylas brand name and trademark to induce the retail customer
into paying it money and then absconding with the customer's money instead of
applying it toward the manufacture and delivery of the H63-6, HYI breached the
covenant of good faith and fair dealing.

227.    As a direct and proximate result of the foregoing, Queen Long has suffered
damages in an amount to be determined at trial.

### Count 11:  Unjust Enrichment Against HYI – H63-6

228.    Queen Long re-alleges and incorporates by reference herein Paragraphs 1 – 169,
above.

229.    This claim is brought in the alternative to the breach of contract claim regarding the
H63-6.

230.    HYI benefitted from retaining $800,000 worth of the retail customer's money for
the H63-6, which HYI neither paid to Queen Long for the manufacture of the H63-6
nor returned to the customer.

231.    HYI failed to pay Queen Long the full wholesale price for the H63-6, leaving a deficit of $276,930 still owed to Queen Long for the vessel.

232.    HYI was enriched by improperly retaining $800,000 that should have been paid to Queen Long for the manufacture of the H63-6.

233.    It is against the fundamental principles of justice, equity, and good conscience to permit HYI to retain the full worth of $800,000 of customer payments for the H63-6 when $276,920 is still owed to Queen Long for the manufacture of the H63-6.

### Count 12:  Breach of Contract Against HYI – H63-5

234.    Queen Long re-alleges and incorporates by reference herein Paragraphs 1 – 169, above.

235.    Queen Long and HYI had a valid contract for purchase of the H63-5, under which Queen Long agreed to manufacture the custom sailing yacht H63-5 pursuant to HYI's order, in exchange for HYI's agreement to pay Queen Long a wholesale price of $1,366,165.

236.    Queen Long fulfilled its contractual obligations by manufacturing and delivering the H63-5.

237.    HYI breached the contract by failing to pay Queen Long $1,264,865 of the contracted price for H63-5.

238.    HYI also breached the contract by failing to perform and pay for the commissioning services for the H63-5, which services cost Queen Long $148,259 to perform.

239.    Despite recouping $1,150,000 of the funds from the retail customer, as a direct and proximate result of HYI's material breach of contract, Queen Long has suffered damages, including without limitation, $263,124, which includes the $114,865 still

owed for the H63-6 under the contract and the $148,259 Queen Long spent to commission the H63-5, compensatory and consequential damages, and damage to business reputation.

## Count 13:  Breach of the Covenant of Good Faith and Fair Dealing Against HYI – H63-5

240.   Queen Long re-alleges and incorporates by reference herein Paragraphs 1 – 169, above.

241.   Queen Long and HYI had a valid and enforceable agreement under which Queen Long agreed to manufacture the H63-5 in exchange for HYI paying Queen Long the wholesale price of the vessel.

242.   Queen Long and HYI also had a valid and enforceable agreement whereby Queen Long allowed HYI limited authorization to utilize the Hylas brand and trademark to market Hylas yachts.

243.   Queen Long fully performed its obligations under the agreement by completing the manufacture of the H63-5.

244.   By accepting money from the retail customer and misappropriating that money instead of remitting it to Queen Long for the manufacture of the H63-5, HYI breached the covenant of good faith and fair dealing.

245.   By employing the Hylas brand name and trademark to induce the retail customer into paying it money and then absconding with the customer's money instead of applying it toward the manufacture and commissioning of the H63-5, HYI breached the covenant of good faith and fair dealing.

246.   As a direct and proximate result of the foregoing, Queen Long has suffered damages in an amount to be determined at trial.

## Count 14:  Unjust Enrichment Against HYI – H63-5

247.    Queen Long re-alleges and incorporates by reference herein Paragraphs 1 – 169, above.

248.    This claim is brought in the alternative to the breach of contract claim regarding the H63-5.

249.    HYI benefitted from retaining $450,000 worth of the retail customer's money for the H63-5, which HYI neither paid to Queen Long for the manufacture of the H63-5 nor returned to the customer.

250.    HYI failed to pay Queen Long the full wholesale price for the H63-5, leaving a deficit of $114,865 still owed to Queen Long for the vessel.

251.    HYI also failed to commission the H63-5, costing Queen Long $148,259 in commissioning expenses.

252.    HYI was enriched by improperly retaining $450,000 that should have been paid to Queen Long for the manufacture of the H63-5 and/or used to commission the vessel.

253.    It is against the fundamental principles of justice, equity, and good conscience to permit HYI to retain the full $450,000 worth of customer payments for the H63-5 when $263,124 is still owed to Queen Long for the manufacture and commissioning of the H63-5.

## Count 15:  Breach of Contract Against HYI – H56-23

254.    Queen Long re-alleges and incorporates by reference herein Paragraphs 1 – 169, above.

255.    Queen Long and HYI had a valid contract for purchase of the H56-23, under which Queen Long agreed to manufacture the custom sailing yacht H56-23 pursuant to HYI's

order, in exchange for HYI's agreement to pay Queen Long a wholesale price of $873,570.

256.    Queen Long fulfilled its contractual obligations by manufacturing and delivering the H56-23.

257.    HYI breached the contract by failing to pay Queen Long $9,570 of the contracted price for H56-23.

258.    HYI also breached the contract by failing to perform and pay for the commissioning services for the H56-23, for which services Queen Long rendered $50,000 to the retail customer due to HYI nonfeasance.

259.    As a direct and proximate result of HYI's material breach of contract, Queen Long has suffered damages, including without limitation, $59,570, which includes the $9,570 still owed for the H56-23 under the contract and the $50,000 Queen Long spent to commission the H56-23, compensatory and consequential damages, and damage to business reputation.

**Count 16:  Breach of the Covenant of Good Faith and Fair Dealing Against HYI – H56-23**

260.    Queen Long re-alleges and incorporates by reference herein Paragraphs 1 – 169, above.

261.    Queen Long and HYI had a valid and enforceable agreement under which Queen Long agreed to manufacture the H56-23in exchange for HYI paying Queen Long the wholesale price of the vessel.

262.    Queen Long and HYI also had a valid and enforceable agreement whereby Queen Long allowed HYI limited authorization to utilize the Hylas brand and trademark to market Hylas yachts.

263.    Queen Long fully performed its obligations under the agreement by completing the

manufacture of the H56-23.

264.    By accepting money from the retail customer and misappropriating that money

instead of remitting it to Queen Long for the manufacture of the H56-23, HYI breached

the covenant of good faith and fair dealing.

265.    By employing the Hylas brand name and trademark to induce the retail customer

into paying it money and then absconding with the customer's money instead of

applying it toward the manufacture and commissioning of the H56-23, HYI breached

the covenant of good faith and fair dealing.

266.    As a direct and proximate result of the foregoing, Queen Long has suffered

damages in an amount to be determined at trial.

### Count 17:  Unjust Enrichment Against HYI – H56-23

267.    Queen Long re-alleges and incorporates by reference herein Paragraphs 1 – 169,

above.

268.    This claim is brought in the alternative to the breach of contract claim regarding the

H56-23.

269.    HYI benefitted from retaining $238,050 worth of the retail customer's money for

the H56-23, which HYI neither paid to Queen Long for the manufacture of the H56-23

nor returned to the customer.

270.    HYI failed to pay Queen Long the full wholesale price for the H56-23, leaving a

deficit of $9,570 still owed to Queen Long for the vessel.

271.    HYI also failed to commission the H56-23, which resulted in Queen Long

reimbursing $50,000 to the customer for commissioning expenses.

272.    HYI was enriched by improperly retaining $238,050 that should have been paid to Queen Long for the manufacture of the H56-23 and/or used to commission the vessel.

273.    It is against the fundamental principles of justice, equity, and good conscience to permit HYI to retain the full $238,050 worth of customer payments for the H56-23 when $59,570 is still owed to Queen Long for the manufacture and commissioning of the H56-23.

<b><u>Count 18:  Breach of Contract Against HYI – H56-25</u></b>

274.    Queen Long re-alleges and incorporates by reference herein Paragraphs 1 – 169, above.

275.    Queen Long and HYI had a valid contract for purchase of the H56-25, under which Queen Long agreed to manufacture the custom sailing yacht H56-25 pursuant to HYI's order, in exchange for HYI's agreement to pay Queen Long the full wholesale price of the vessel.

276.    Queen Long fulfilled its contractual obligations by manufacturing and delivering the H56-25.

277.    HYI breached the contract by failing to pay Queen Long the contracted price for H56-25.

278.    Despite receiving direct payment for the H56-25 from the retail customer, because HYI fraudulently absconded with the customer's $194,400 deposit, Queen Long was forced to deduct $150,000 from the wholesale price received from the customer.

279.    Thus, as a direct and proximate result of HYI's material breach of contract, Queen Long has suffered damages, including without limitation, the loss of $150,000 - representing the price deduction from the wholesale price of the H56-25 as a result of

HYI's misappropriation of the customer's deposit, compensatory and consequential damages, and damage to business reputation.

## Count 19:  Breach of the Covenant of Good Faith and Fair Dealing Against HYI– H56-25

280.   Queen Long re-alleges and incorporates by reference herein Paragraphs 1 – 169, above.

281.   Queen Long and HYI had a valid and enforceable agreement under which Queen Long agreed to manufacture the H56-25 in exchange for HYI paying Queen Long the wholesale price of the vessel.

282.   Queen Long and HYI also had a valid and enforceable agreement whereby Queen Long allowed HYI limited authorization to utilize the Hylas brand and trademark to market Hylas yachts.

283.   Queen Long fully performed its obligations under the agreement by completing the manufacture of the H56-25.

284.   By accepting money from the retail customer and misappropriating that money instead of remitting it to Queen Long for the manufacture of the H56-25, HYI breached the covenant of good faith and fair dealing.

285.   By employing the Hylas brand name and trademark to induce the retail customer into paying it money and then absconding with the customer's money instead of applying it toward the manufacture and delivery of the H56-25, HYI breached the covenant of good faith and fair dealing.

286.   As a direct and proximate result of the foregoing, Queen Long has suffered damages in an amount to be determined at trial.

**Count 20:  Unjust Enrichment Against HYI – H56-25**

287.    Queen Long re-alleges and incorporates by reference herein Paragraphs 1 – 169, above.

288.    This claim is brought in the alternative to the breach of contract claim regarding the H56-25.

289.    HYI benefitted from retaining $194,400 worth of the retail customer's money for the H56-25, which HYI neither paid to Queen Long for the manufacture of the H56-25 nor returned to the customer.

290.    HYI failed to pay Queen Long any of the customer's $194,400 deposit, forcing Queen Long to deduct $150,000 from the price received for the vessel.

291.    HYI was enriched by improperly retaining $194,400 that should have been paid to Queen Long for the manufacture of the H56-25.

292.    It is against the fundamental principles of justice, equity, and good conscience to permit HYI to retain $194,400 of customer payments for the H56-25 when $150,000 is still owed to Queen Long for the manufacture of the H56-25.

**Count 21:  Breach of Contract Against HYI – H56-24**

293.    Queen Long re-alleges and incorporates by reference herein Paragraphs 1 – 169, above.

294.    Queen Long and HYI had a valid contract for purchase of the H56-24, under which Queen Long agreed to manufacture the custom sailing yacht H56-24 pursuant to HYI's order, in exchange for HYI's agreement to pay Queen Long a wholesale price of $903,325.

295.     Queen Long fulfilled its contractual obligations by manufacturing and delivering the H56-24.

296.     HYI breached the contract by failing to pay Queen Long $843,325 of the contracted price for H56-24.

297.     Despite recouping $829,825 of the funds from the retail customer, as a direct and proximate result of HYI's material breach of contract, Queen Long has suffered damages, including without limitation, the loss of the $13,500 still owed for the H56-24 under the contract, compensatory and consequential damages, and damage to business reputation.

## Count 22:  Breach of the Covenant of Good Faith and Fair Dealing Against HYI– H56-24

298.     Queen Long re-alleges and incorporates by reference herein Paragraphs 1 – 169, above.

299.     Queen Long and HYI had a valid and enforceable agreement under which Queen Long agreed to manufacture the H56-24 in exchange for HYI paying Queen Long the wholesale price of the vessel.

300.     Queen Long and HYI also had a valid and enforceable agreement whereby Queen Long allowed HYI limited authorization to utilize the Hylas brand and trademark to market Hylas yachts.

301.     Queen Long fully performed its obligations under the agreement by completing the manufacture of the H56-24.

302.     By accepting money from the retail customer and misappropriating that money instead of remitting it to Queen Long for the manufacture of the H56-24, HYI breached the covenant of good faith and fair dealing.

303.     By employing the Hylas brand name and trademark to induce the retail customer into paying it money and then absconding with the customer's money instead of applying it toward the manufacture and delivery of the H56-24, HYI breached the covenant of good faith and fair dealing.

304.     As a direct and proximate result of the foregoing, Queen Long has suffered damages in an amount to be determined at trial.

### Count 23:  Unjust Enrichment Against HYI – H56-24

305.     Queen Long re-alleges and incorporates by reference herein Paragraphs 1 – 169, above.

306.     This claim is brought in the alternative to the breach of contract claim regarding the H56-24.

307.     HYI benefitted from retaining $134,400 worth of the retail customer's money for the H56-24, which HYI neither paid to Queen Long for the manufacture of the H56-24 nor returned to the customer.

308.     HYI failed to pay Queen Long the full wholesale price for the H56-24, leaving a deficit of $13,500 still owed to Queen Long for the vessel.

309.     HYI was enriched by improperly retaining $134,400 that should have been paid to Queen Long for the manufacture of the H56-24.

310.     It is against the fundamental principles of justice, equity, and good conscience to permit HYI to retain the full worth of $134,400 of customer payments for the H56-24 when $13,500 is still owed to Queen Long for the manufacture of the H56-24.

**Count 24:  Breach of Contract Against HYI – H56-26**

311.    Queen Long re-alleges and incorporates by reference herein Paragraphs 1 – 169, above.

312.    Queen Long and HYI had a valid contract for purchase of the H56-26, under which Queen Long agreed to manufacture the custom sailing yacht H56-26 pursuant to HYI's order, in exchange for HYI's agreement to pay Queen Long the full wholesale price of the vessel.

313.    Queen Long fulfilled its contractual obligations by manufacturing and delivering the H56-26.

314.    HYI breached the contract by failing to pay Queen Long the contracted price for H56-26.

315.    Despite receiving direct payment for the H56-26 from the retail customer, because HYI fraudulently absconded with $193,000 of the customer's money, Queen Long was forced to deduct $100,000 from the wholesale price received from the customer.

316.    Thus, as a direct and proximate result of HYI's material breach of contract, Queen Long has suffered damages, including without limitation, the loss of $100,000 - representing the price deduction from the wholesale price of the H56-26 as a result of HYI's misappropriation of the customer's money, compensatory and consequential damages, and damage to business reputation.

**Count 25:  Breach of the Covenant of Good Faith and Fair Dealing Against HYI– H56-26**

317.    Queen Long re-alleges and incorporates by reference herein Paragraphs 1 – 169, above.

318.    Queen Long and HYI had a valid and enforceable agreement under which Queen
Long agreed to manufacture the H56-26 in exchange for HYI paying Queen Long the
wholesale price of the vessel.

319.    Queen Long and HYI also had a valid and enforceable agreement whereby Queen
Long allowed HYI limited authorization to utilize the Hylas brand and trademark to
market Hylas yachts.

320.    Queen Long fully performed its obligations under the agreement by completing the
manufacture of the H56-26.

321.    By accepting money from the retail customer and misappropriating that money
instead of remitting it to Queen Long for the manufacture of the H56-26, HYI breached
the covenant of good faith and fair dealing.

322.    By employing the Hylas brand name and trademark to induce the retail customer
into paying it money and then absconding with the customer's money instead of
applying it toward the manufacture and delivery of the H56-26, HYI breached the
covenant of good faith and fair dealing.

323.    As a direct and proximate result of the foregoing, Queen Long has suffered
damages in an amount to be determined at trial.

**Count 26:  Unjust Enrichment Against HYI – H56-26**

324.    Queen Long re-alleges and incorporates by reference herein Paragraphs 1 – 169,
above.

325.    This claim is brought in the alternative to the breach of contract claim regarding the
H56-26.

326.    HYI benefitted from retaining $193,000 worth of the retail customer's money for the H56-26, which HYI neither paid to Queen Long for the manufacture of the H56-26 nor returned to the customer.

327.    HYI failed to pay Queen Long $193,000 of the customer's payments for H56-26, forcing Queen Long to deduct $100,000 from the price received for the vessel.

328.    HYI was enriched by improperly retaining $193,000 that should have been paid to Queen Long for the manufacture of the H56-26.

329.    It is against the fundamental principles of justice, equity, and good conscience to permit HYI to retain $193,000 of customer payments for the H56-26 when $100,000 is still owed to Queen Long for the manufacture of the H56-26.

### Count 27:  Breach of Contract Against HYI – H56-27

330.    Queen Long re-alleges and incorporates by reference herein Paragraphs 1 – 169, above.

331.    Queen Long and HYI had a valid contract for purchase of the H56-27, under which Queen Long agreed to manufacture the custom sailing yacht H56-27 pursuant to HYI's order, in exchange for HYI's agreement to pay Queen Long the full wholesale price of the vessel.

332.    Queen Long fulfilled its contractual obligations by manufacturing and delivering the H56-27.

333.    HYI breached the contract by failing to pay Queen Long the contracted price for H56-27.

334.    Despite receiving direct payment for the H56-27 from the retail customer, because HYI fraudulently absconded with the customer's $115,000 deposit, Queen Long was forced to deduct $100,000 from the wholesale price received from the customer.

335.    Thus, as a direct and proximate result of HYI's material breach of contract, Queen Long has suffered damages, including without limitation, the loss of $100,000 - representing the price deduction from the wholesale price of the H56-27 as a result of HYI's misappropriation of the customer's deposit, compensatory and consequential damages, and damage to business reputation.

**Count 28:  Breach of the Covenant of Good Faith and Fair Dealing Against HYI– H56-27**

336.    Queen Long re-alleges and incorporates by reference herein Paragraphs 1 – 169, above.

337.    Queen Long and HYI had a valid and enforceable agreement under which Queen Long agreed to manufacture the H56-27 in exchange for HYI paying Queen Long the wholesale price of the vessel.

338.    Queen Long and HYI also had a valid and enforceable agreement whereby Queen Long allowed HYI limited authorization to utilize the Hylas brand and trademark to market Hylas yachts.

339.    Queen Long fully performed its obligations under the agreement by completing the manufacture of the H56-27.

340.    By accepting money from the retail customer and misappropriating that money instead of remitting it to Queen Long for the manufacture of the H56-27, HYI breached the covenant of good faith and fair dealing.

341.    By employing the Hylas brand name and trademark to induce the retail customer into paying it money and then absconding with the customer's money instead of applying it toward the manufacture and delivery of the H56-27, HYI breached the covenant of good faith and fair dealing.

342.    As a direct and proximate result of the foregoing, Queen Long has suffered damages in an amount to be determined at trial.

### Count 29:  Unjust Enrichment Against HYI – H56-27

343.    Queen Long re-alleges and incorporates by reference herein Paragraphs 1 – 169, above.

344.    This claim is brought in the alternative to the breach of contract claim regarding the H56-27.

345.    HYI benefitted from retaining the retail customer's $115,000 deposit for the H56-27, which HYI neither paid to Queen Long for the manufacture of the H56-27 nor returned to the customer.

346.    HYI failed to pay Queen Long any of the customer's $115,000 deposit, forcing Queen Long to deduct $100,000 from the price received for the vessel.

347.    HYI was enriched by improperly retaining $115,000 that should have been paid to Queen Long for the manufacture of the H56-27.

348.    It is against the fundamental principles of justice, equity, and good conscience to permit HYI to retain $115,000 of customer payments for the H56-27 when $100,000 is still owed to Queen Long for the manufacture of the H56-27.

## Count 30:  Breach of the Covenant of Good Faith and Fair Dealing Against HYI – Fraudulent Orders for Hylas Sailing Yachts

349.    Queen Long re-alleges and incorporates by reference herein Paragraphs 1 – 169, above.

350.    Queen Long and HYI had a valid and enforceable agreement whereby Queen Long allowed HYI to serve as one of its dealers of Hylas sailing yachts.

351.    As part of this agreement, Queen Long allowed HYI limited authorization to utilize the Hylas brand and trademark to market Hylas yachts.

352.    Queen Long fully performed its obligations under the agreement by completing all orders that HYI placed with it and maintaining a high quality of workmanship for Hylas sailing yachts.

353.    By accepting orders from retail customers for Hylas yachts and never placing orders for those yachts with Queen Long, HYI breached the covenant of good faith and fair dealing.

354.    By employing the Hylas brand name and trademark to induce the retail customer into paying down payments for Hylas yachts and then absconding with the customers' money instead of applying it toward the manufacture and delivery of the yachts, HYI breached the covenant of good faith and fair dealing.

355.    HYI's fraudulent actions have irreparably harmed the Hylas brand and Queen Long's business reputation.

356.    As a direct and proximate result of the foregoing, Queen Long has suffered damages in an amount to be determined at trial.

**Count 31:  Breach of the Covenant of Good Faith and Fair Dealing Against HYI –
Fraudulent Orders for "Hylas" Motor Yachts**

357.    Queen Long re-alleges and incorporates by reference herein Paragraphs 1 – 169,

above.

358.    Queen Long and HYI had a valid and enforceable agreement whereby Queen Long

allowed HYI to serve as one of its dealers of Hylas sailing yachts.

359.    As part of this agreement, Queen Long allowed HYI limited authorization to utilize

the Hylas brand and trademark to market Hylas yachts.

360.    Queen Long fully performed its obligations under the agreement by completing all

orders that HYI placed with it and maintaining a high quality of workmanship for Hylas

sailing yachts.

361.    By misusing the Hylas trademark to market vessels that were not, in fact, Hylas

vessels, HYI breached the covenant of good faith and fair dealing.

362.    By fraudulently misrepresenting to customers that Queen Long would be building

the motor yachts, even though it knew that Queen Long would not, in fact, be

manufacturing the motor yachts, HYI breached the covenant of good faith and fair

dealing.

363.    By accepting orders from retail customers for Hylas yachts and never placing orders

for those yachts with Queen Long, HYI breached the covenant of good faith and fair

dealing.

364.    By employing the Hylas brand name and trademark to induce the retail customer

into paying down payments for Hylas yachts and then absconding with the customers'

money instead of applying it toward the manufacture and delivery of the yachts, HYI

breached the covenant of good faith and fair dealing.

365.    HYI's fraudulent actions have irreparably harmed the Hylas brand and Queen Long's business reputation.

366.    As a direct and proximate result of the foregoing, Queen Long has suffered damages in an amount to be determined at trial.

### Count 32:  Breach of Contract Against HYI– Marketing Expenses

367.    Queen Long re-alleges and incorporates by reference herein Paragraphs 1 – 169, above.

368.    HYI and Queen Long had an agreement under which Queen Long allowed HYI to use Hylas vessels in its marketing efforts, but HYI was solely responsible for paying for all marketing expenses it incurred, including without limitation, boat show entrance fees and related expenses and advertising fees for print and online advertisements.

369.    HYI entered Hylas yachts in the 2016 Newport Boat Show but, HYI failed to pay the boat show's entrance and related fees, in breach of the parties' agreement.

370.    HYI also placed advertisements for itself using the Hylas brand and trademark in numerous online and print publications, for which HYI failed to pay the vendors in breach of the parties' agreement.

371.    Due to HYI's failure to pay the boat show fees for the Newport Boat Show, Queen Long was forced to pay $4000 to the operators of the Newport Boat Show in order to preserve its good relationship with the operators and the integrity of the Hylas brand.

372.    As a result of HYI's failure to render payment for advertising fees to numerous publications and vendors, Queen Long's relationships with those entities has been negatively affected and the Hylas brand has been tarnished.

373.    As such, HYI's fraudulent actions have irreparably harmed the Hylas brand and Queen Long's business reputation.

374.    As a direct and proximate result of HYI's material breach of contract, Queen Long has suffered damages, including without limitation, $4,000, compensatory and consequential damages, and damage to business reputation.

**Count 33:  Unjust Enrichment Against HYI – Marketing Expenses**

375.    Queen Long re-alleges and incorporates by reference herein Paragraphs 1 – 169, above.

376.    This claim is brought in the alternative to the breach of contract claim regarding the marketing expenses.

377.    HYI benefitted from being able to participate in the 2016 Newport Boat Show.

378.    Despite participating in the Newport Boat Show, HYI failed to pay the entry costs and related fees for the boat show.

379.    As a result of HYI's failure to pay the boat show fees, Queen Long was forced to pay $4,000 to the operators of the Newport Boat Show.

380.    HYI was unjustly enriched by reaping the benefits of participating in the Newport Boat Show without paying the entrance fee and related expenses for the show.

381.    It is against the fundamental principles of justice, equity, and good conscience to permit HYI to benefit from participation in the Newport Boat Show without reimbursing Queen Long for the $4,000 Queen Long was forced to pay to the boat show operators as a result of HYI's unpaid fees.

### Count 34:  Violation of G.L. ch. 93A Against HYI & Kyle Jachney

382.   Queen Long re-alleges and incorporates by reference herein Paragraphs 1 – 169, above.

383.   Queen Long and HYI are businesses involved in trade or commerce, and Kyle Jachney is a person involved in trade or commerce.

384.   HYI and Jachney committed an unfair or deceptive act or practice by collecting payments from retail customers for yachts and misappropriating those funds instead of applying them to the manufacturing and/or commissioning costs of the yachts.

385.   HYI and Jachney committed an unfair or deceptive act or practice by collecting down payments from retail customers yachts and absconding with the funds instead of placing orders for the yachts.

386.   HYI and Jachney committed an unfair or deceptive act or practice by taking orders and down payments for "Hylas" motor yachts, knowing that no such vessels existed.

387.   HYI and Jachney committed an unfair or deceptive act or practice by misrepresenting in sales contracts that Queen Long would be manufacturing "Hylas" motor yachts, without ever notifying Queen Long of the contracts and knowing that Queen Long had expressly informed HYI and Jachney that it would *not* build "Hylas" motor yachts for HYI or Jachney.

388.   HYI and Jachney committed an unfair or deceptive act or practice by engaging in the unauthorized use of the Hylas trademark.

389.   HYI and Jachney committed an unfair or deceptive act or practice by marketing themselves through a website, www.hylasyachtsusa.com, that improperly uses the Hylas trademark and contains material that is copyrighted by Queen Long despite

knowing that Queen Long owns the trademark and copyrights and has not licensed the use of either for the website

390.    HYI and Jachney's actions as described above were unfair or deceptive acts or practices that were taken willfully and knowingly.

391.    As a direct and proximate result of the foregoing, Queen Long has suffered, and will continue to suffer, actual damages in an amount to be determined at trial, as well as compensatory and consequential damages and damage to business reputation.

392.    In accordance with G.L. ch. 93A, Queen Long seeks an award of not less than two nor more than three times actual damages, in addition to attorneys' fees and costs.

393.    In accordance with G.L. ch. 93A, Queen Long seeks an injunction enjoining HYI and Jachney from any further unfair and deceptive acts and practices, including but not limited to:

   a.  Unauthorized use of the Hylas trademark, name, and/or brand;

   b.  Unauthorized use of copyrighted materials owned by Queen Long;

   c.  Use and/or operation of the website, www.hylasyachtsusa.com;

   d.  Falsely representing to retail customers that Queen Long will be manufacturing vessels for HYI and/or Jachney;

   e.  Fraudulently marketing vessels that do not exist;

   f.  Fraudulently accepting orders and down payments for vessels that do not exist;

   g.  Using the Hylas brand to lure customers into making installment payments for vessels that HYI and/or Jachney know it cannot deliver;

   h.  Using the Hylas brand to lure customers into making down payments for vessels that HYI and/or Jachney know it will not order for manufacture; and,

i.   Any other grant of relief this Court deems just and proper.

**Count 35:  Violation of G.L. ch. 93A Against CYC**

394.   Queen Long re-alleges and incorporates by reference herein Paragraphs 1 – 169, above.

395.   Queen Long and CYC are businesses involved in trade or commerce.

396.   CYC committed an unfair or deceptive act or practice by engaging in the unauthorized use of the Hylas trademark.

397.   CYC committed an unfair or deceptive act or practice by maintaining a website, www.hylasyachtsusa.com, that improperly uses the Hylas trademark and contains material that is copyrighted by Queen Long despite knowing that Queen Long owns the trademark and copyrights and has not licensed the use of either for the website.

398.   CYC committed an unfair or deceptive act or practice by allowing a website it maintains, www.hylasyachtsusa.com, to be used by HYI and Jachney to defraud retail customers seeking to purchase Hylas yachts.

399.   CYC's actions as described above were unfair or deceptive acts or practices that were taken willfully and knowingly.

400.   As a direct and proximate result of the foregoing, Queen Long has suffered, and will continue to suffer, actual damages in an amount to be determined at trial, as well as compensatory and consequential damages and damage to business reputation.

401.   In accordance with G.L. ch. 93A, Queen Long seeks an award of not less than two nor more than three times actual damages, in addition to attorneys' fees and costs.

402.   In accordance with G.L. ch. 93A, Queen Long seeks an injunction enjoining CYC from any further unfair and deceptive acts and practices, including but not limited to:

j.   Unauthorized use of the Hylas trademark, name, and/or brand;

k.   Unauthorized use of copyrighted materials owned by Queen Long;

l.   Operation of the website www.hylasyachtsusa; and,

m.   Any other grant of relief this Court deems just and proper.

**<u>Count 36:  Permanent Injunction Against HYI, Kyle Jachney, & CYC</u>**

403.    Queen Long re-alleges and incorporates by reference herein Paragraphs 1 – 169, above.

404.    Queen Long is the sole owner of the Hylas trademark and brand.

405.    Since at least 2013, HYI and Kyle Jachney have repeatedly used the Hylas brand to defraud customers out of hundreds of thousands of dollars taken as down payments for vessels that were never ordered or taken as installment payments that were applied toward the manufacture or commissioning of the vessels.

406.    Since 2014, HYI and Jachney have also repeatedly engaged in unauthorized use of the Hylas brand to sell vessels that were not actually Hylas yachts and that did not, in fact, exist at all.

407.    HYI and Jachney's fraudulent conduct of stealing the money of customers attempting to purchase Hylas yachts has caused immeasurable damage to the Hylas brand and its goodwill with both Hylas owners and the yachting community as a whole.

408.    HYI and Jachney's fraudulent conduct is particularly damaging to the Hylas brand because many of the customers that HYI and Jachney defrauded were loyal, long term customers of the Hylas brand.

409.    Although Queen Long has revoked all authorization from HYI and Jachney for use of the Hylas brand, name, or trademark, HYI and Jachney continue to use "Hylas" on HYI's website, in their marketing, and in HYI's name.

410.    Although Queen Long has revoked all authorization from HYI, Jachney, and CYC for use of the Hylas brand, name, or trademark, CYC continues to maintain a website, www.hylasyachtsusa.com, that improperly uses the "Hylas" name and trademark.

411.    The only remedy to prevent future damage to the Hylas brand is for HYI, Jachney, and CYC to be enjoined from using or associating at all with the Hylas brand, name, or trademark, including without limitation, operating the website, www.hylasyachtsusa.com.

412.    Queen Long has already experienced irreparable harm due to HYI and Jachney's fraudulent actions conducted under the guise of the Hylas brand, including loss of revenue, loss of goodwill, and damage to reputation, and they will continue to suffer such harm unless HYI, Jachney, and CYC are prevented from using or associating at all with the Hylas brand, name, or trademark, including without limitation operating the www.hylasyachtsusa.com website.

## Count 37: Declaratory Judgment – HYI Does Not Have an "Ownership Interest" in the Hull Molds

413.    Queen Long re-alleges and incorporates by reference herein Paragraphs 1 – 169, above.

414.    Although Queen Long has solely borne the cost and burden of maintaining physical possession of the Hull Molds, solely held license to use the Hull Molds, and solely paid the royalties for use of the Hull Molds, HYI is asserting an "ownership interest" in the Hull Molds.

415.     Thus, there is a real and actual controversy between HYI and Queen Long regarding what, if any, "ownership interest" HYI has in the Hull Molds.

416.     Due to the multiple pending lawsuits against HYI, the slew of unsatisfied final judgments against HYI, and the numerous third-party creditors of HYI, combined with HYI's public representations of "ownership" in the Hull Molds, there is a real and substantial threat that HYI's creditors could assert rights to the Hull Molds that Queen Long would be forced to defend.

417.     Therefore, the issue of the ownership of the Hull Molds demands specific relief through a decree of conclusive character.

418.     Queen Long is entitled to a Declaratory Judgment that HYI does not have any ownership interest in the Hull Molds and that Queen Long is the sole party with a license to use the Hull Molds.

**Count 38: Unjust Enrichment Against HYI – Royalties for the Hull Molds**

419.     Queen Long re-alleges and incorporates by reference herein Paragraphs 1 – 169, above.

420.     This claim is brought in the alternative to Count 37 regarding the "ownership" of the Hull Molds.

421.     Should this Court determine that HYI has an "ownership interest" in the Hull Molds, then HYI is responsible for payment of the royalties for use of the Hull Molds in proportion to its ownership interest.

422.     If HYI is determined to have an "ownership interest" in the Hull Molds, HYI benefitted from Queen Long's sole payment of the royalties for use of the Hull Molds.

423.    HYI has not paid any of the royalties for use of the Hull Molds, which is the obligation of the holder of the license to use the Hull Molds.

424.    At all times through the present, Queen Long has solely borne the burden of paying the royalty fees for the Hull Molds, an amount which totaled $1,404,776.

425.    If HYI is determined to hold any "ownership interest" in the Hull Molds, HYI has been unjustly enriched by reaping the benefits of such "ownership" without bearing its proportionate responsibility for paying the royalty fees.

426.    It is against the fundamental principles of justice, equity, and good conscience to permit HYI to benefit from holding an "ownership interest" in the Hull Molds without holding HYI responsible for paying its proportionate share of the royalty fees.

**Count 39: Unjust Enrichment Against HYI –Expenses for the Hull Molds**

427.    Queen Long re-alleges and incorporates by reference herein Paragraphs 1 – 169, above.

428.    This claim is brought in the alternative to Count 37 regarding the "ownership" of the Hull Molds.

429.    Should this Court determine that HYI has an "ownership interest" in the Hull Molds, then HYI is responsible for the expenses of storing and maintaining the Hull Molds in proportion to its ownership interest.

430.    If HYI is determined to have an "ownership interest" in the Hull Molds, HYI benefitted from the maintenance and storage services that Queen Long provided for the Hull Molds.

431.    HYI has not paid any of the expenses for maintaining or storing the Hull Molds, which is an obligation of the owner of the Hull Molds.

432.    At all times through the present, Queen Long has solely borne the expense of storing and maintaining the Hull Molds.

433.    If HYI is determined to hold any "ownership interest" in the Hull Molds, HYI has been unjustly enriched by reaping the benefits of such "ownership" without bearing its proportionate responsibility for paying for the storage and expense of the Hull Molds.

434.    It is against the fundamental principles of justice, equity, and good conscience to permit HYI to benefit from holding an "ownership interest" in the Hull Molds without holding HYI responsible for paying its proportionate share of the storage and maintenance expenses for the Hull Molds.

**Count 40: Request for Accounting; Disgorgement Against HYI and Kyle Jachney**

435.    Queen Long re-alleges and incorporates by reference herein Paragraphs 1 – 169, above.

436.    Queen Long seeks an accounting of all financial transactions HYI and/or Kyle Jachney have undertaken which concern or relate to Queen Long, Hylas Yachts International, Inc., or Hylas brand yachts in any way whatsoever.

437.    The accounting shall include a detailed and supported documentation of all amounts received or paid by HYI and/or Jachney with regard to Queen Long or Hylas brand yachts.

438.    As HYI alleges in its Complaint that Queen Long owes HYI "in excess of $650,000.00 in warranty work that [HYI] had performed or paid for," the accounting shall include all financial transactions HYI has undertaken that concern or relate to HYI's performance of or payment for warranty work regarding Hylas vessels.

439.     The accounting shall also include all financial transactions between HYI and/or Jachney and retail customers purchasers of Hylas yachts from 2011 until the present.

440.     The accounting shall also include all financial transactions that directly or indirectly involve funds that HYI and/or Jachney received from retail purchasers of Hylas yachts from 2011 until the present, including but not limited to HYI and/or Jachney's use or transfer of the customers' money.

441.     The accounting shall also include all financial transactions that directly or indirectly relate to HYI's claim of "ownership interest" in the Hull Molds or claim to the intellectual property related the Hull Molds.

442.     The accounting shall also include any other matters which in law or equity should be disclosed to Queen Long.

443.     The accounting shall include, but is not limited to, any and all damages, including disgorgement of any funds misappropriated, embezzled, fraudulently transferred, or otherwise improperly usurped by HYI and/or Jachney that rightfully belongs to Queen Long.

## **PRAYERS FOR RELIEF**

WHEREFORE, Queen Long respectfully prays that is Court:

a.   Enter judgment for Queen Long and against HYI, Jachney and/or CYC on each of the counts listed above;

b.   Award Queen Long damages against HYI, Jachney, and/or CYC in an amount to be determined at trial;

c.   Award Queen Long up to three but not less than two times its actual damages as determined by this Court;

d.  Award Queen Long's attorneys' fees, interest and costs;

e.  Grant a permanent injunction enjoining HYI, Jachney, and/or CYC from using the Hylas brand, including without limitation the website www.hylasyachtsusa.com, or using any intellectual property owned by Queen Long or associated with the Hull Molds;

f.  Enter a declaratory judgment HYI does not have any ownership interest in the Hull Molds and that Queen Long is the sole party with a license to use the Hull Molds; and

g.  Award such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Queen Long hereby demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted,

QUEEN LONG MARINE CO. LTD and HYLAS
YACHTS INTERNATIONAL, LLC,

By its attorneys,

/s/ Benjamin M. McGovern
Benjamin M. McGovern (BBO #661611)
HOLLAND & KNIGHT LLP
10 St. James Avenue
Boston, MA 02116
Tel: (617) 523-2700
benjamin.mcgovern@hklaw.com

Serena A. Witter (*pro hac vice application forthcoming*)
Blair Brogan (*pro hac vice application forthcoming*)
ROBERT ALLEN LAW
The Four Seasons Office Tower
1441 Brickell Avenue, Suite 1400
Miami, Florida 33131
Tel: (305) 372-3300

Date: April 6, 2018

## CERTIFICATE OF SERVICE

     I, Benjamin M. McGovern, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 6th day of April, 2018.

                              /s/ Benjamin M. McGovern
                              Benjamin M. McGovern

Dated:  April 6, 2018